IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CORWIN DELANO ORR,                                             Civ. No. 3:14-cv-00898-AC

               Plaintiff,                                        FINDINGS AND
                                                RECOMMENDATION

     v.

DERRICK PETERSON and S. NEELY,

               Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

       Plaintiff Corwin Delano Orr ("Orr"), proceeding *pro se*, filed this lawsuit against Defendants

Derrick Peterson and Sean Neely[1] ("Defendants") under 42 U.S.C. § 1983 for violations of his

Fourth, Fourteenth, and Eighth Amendment rights. He also alleges a claim for "negligence."

Defendants now move for summary judgment. After review of the record, the court concludes

_____

[1]Plaintiff's Complaint names as defendant "S. Neely." However, Defendants stipulated
"S. Neely" likely refers to Sean Neely, who has entered an appearance in this court.

Defendants are entitled to summary judgment.

*Factual Background*

Orr was arrested in February 2014 for possession of cocaine, resisting arrest, and attempted assault of a police officer. (Declaration of Jose Martinez ("Martinez Decl.") at ¶ 5, Ex. 1.) Following his arrest, Orr was housed in the Multnomah County Detention Center ("MCDC") to await trial. (*Id.*) While Deputies attempted to book Orr, he became disruptive and verbally threatened deputies. (Martinez Decl. at ¶ 7.) After a disciplinary hearing, the MCDC hearings officer imposed two consecutive fifteen-day periods of disciplinary segregation and a concurrent ten-day period of disciplinary segregation. (Martinez Decl. at ¶ 8, Ex. 3.)

During his term in segregation, Orr was housed primarily in 4B ("Unit 4B), an administrative-segregation unit. (Martinez Decl, ¶ 8, Ex. 3.) Similar to other areas of MCDC, Unit 4B is equipped with heavy metal security doors designed to be fire resistant and to withstand a "sustained assault." (Declaration of Raimond Adgers ("Adgers Decl.") at ¶ 12.) Moreover, the doors are designed in a manner to "accommodate the efficient movement of inmates and personnel across units, and must be built to such a scale so as to allow for the easy passage of individuals using mobility devices." (Adgers Decl. at ¶ 13.) Because of the purposes for which these doors are designed, they are necessarily "very heavy and quite large." (Adgers Decl. at ¶ 13.)

Orr alleges that while he was housed in Unit 4B, the security doors opened and shut at all hours of the day and night. (Compl. Ex. 1-5) Because of the weight of the doors, opening and closing them created a significant noise which deprived Orr of sleep and "peace of mind." (Compl. Ex. 1-5.) Orr repeatedly complained to MCDC staff that the noise created by the doors caused him stress, anxiety, and "constant anger." (Compl. Ex. 1-5.) Aside from explaining to Orr that the noise

was unavoidable, MCDC did not address Orr's concerns. (Compl. Ex. 1-5.)

*Procedural Background*

Orr filed his complaint on June 4, 2014, alleging violations of his Fourth, Fourteenth, and

Eighth Amendment rights. Although he does not articulate it as a separate claim, Orr also makes

reference to a his claims arising under "negligence." (Compl. at 4.) He seeks an injunction, punitive

damages, and damages for his pain and suffering. (Compl. at 7.) Attached to Orr's Complaint are

four exhibits,[2] all of which appear to be inmate grievance forms filed by Orr during his time at

MCDC. Defendants' answered Orr's complaint, and thereafter, moved for summary judgment on

all of Orr's claims. (Dkt. Nos. 16, 20.) Orr did not file a response or otherwise contest any of

Defendants' arguments and, aside from the exhibits attached to his complaint, did not introduce any

evidence to rebut Defendants' motion.

*Legal Standard*

A court should grant a motion for summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a). The moving party bears the burden of establishing that no issue of fact exists

and that the nonmovant cannot prove one or more essential elements of a claim or defense. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the movant meets his burden, the nonmovant must

"go beyond the pleadings [ ] by her own affidavits . . . [to] designate specific facts showing that there

is a genuine issue for trial." *Id.* (internal quotation marks omitted). Conclusory allegations which

are unsupported by factual material such as affidavits and documentary evidence are insufficient to

---

[2]Orr attached to his complaint Exhibits 1, 3, 4, and 5. Thus, although the exhibits are numbered up to five, there is no exhibit 2, so only four exhibits are at issue.

FINDINGS AND RECOMMENDATION - 3                                    [RMD]

defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). However, "[e]ven in the absence of opposing affidavits, summary judgment is inappropriate where the movant's papers are insufficient on their face." *White by White v. Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986)

On summary judgment, the court is bound to view all facts in a light most favorable to the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). Further, where the nonmoving party to a motion for summary judgment is a *pro se* litigant, the court must "construe liberally the filings and motions." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## *Discussion*

Defendants advance four arguments in support of their motion for summary judgment. First, they argue Defendants cannot be held personally liable for constitutional violations because neither Defendant "personally participated in the selection" and installation of the heavy-duty security doors. Second, they argue Orr cannot establish the objective and subjective elements of his constitutional claim. Third, they argue Defendants are entitled to qualified immunity. Fourth, they contend Orr cannot prove damages as part of his negligence claim.

## I. Orr's Request for Injunctive Relief

Before the court addresses Defendants' arguments, it must address the justiciability of Orr's claim for injunctive relief. "The jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution." *GTE Cal., Inc. v. Fed. Commc'n Comm'n*, 39 F.3d 940, 945 (9th Cir. 1994). As a result of this jurisdictional prerequisite, the court has "an independent obligation to consider [issues of justiciability, including] mootness *sua sponte. Shell*

FINDINGS AND RECOMMENDATION - 4                                    [RMD]

*Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1286 (9th Cir. 2013). A claim is moot where it "loses its character as a live controversy" and the court cannot grant the plaintiff "effective relief." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797-98 (9th Cir. 1999), *DiRaffael v. Cal. Military Dep't*, — Fed.Appx. —, 2015 WL 625197, at *1 (9th Cir. 2015). "A prisoner's release from prison generally moots his claims for declaratory or injunctive relief relating to the prison's policies. *Bryans v. Fuzi*, No. 3:14-cv-00635-JE, 2015 WL 758547, at *2 (D. Or. Feb 23, 2015) (citing *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995)).

Orr requests injunctive relief in his complaint. Although he does not outline the specifics of what form that injunction would take, the court presumes, considering his allegations, that he requests either the installation of some mechanism which would reduce the noise created by the security doors or his removal from Unit 4B to a quieter area of MCDC. Regardless, it is undisputed that Orr was released from custody on June 13, 2014. As a result, his claims for injunctive relief have lost the character of a true legal dispute and are moot. Therefore, the court should grant summary judgment in Defendants' favor on Orr's claim for injunctive relief. Still at issue, however, is Orr's claim that he is entitled to damages for violations of his constitutional rights.

## II. Claims Under 42 U.S.C. § 1983

Orr alleges in his complaint claims are for "negligence" and violations of his constitutional rights. The constitution does not create a private right of action for rights violations. However, the civil cover sheet to Orr's complaint cites 42 U.S.C. § 1983 as the statute giving rise to his cause of action. To prevail in an claim under § 1983, the plaintiff must show "(1) [a] deprivation of a right secured by the Constitution and laws of the United states, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th

Cir. 2012) (quotation marks and citations omitted). In proving the second element, the plaintiff must demonstrate a causal connection between the constitutional deprivation and the defendant's acts or omissions. *Leer. v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.*

### A. Defendants' Personal Involvement in the Alleged Constitutional Violations

Defendants argue they are entitled to summary judgment because neither Defendant participated in the process of designing, selecting, or installing the security doors. Stated alternatively, Defendants ask the court to find that Orr cannot establish a causal element of his claim. In support of their argument, Defendants introduced the Declaration of Raimond Adgers, a captain with the Multnomah County Sheriff's Office. He testified to the following:

> The last time security doors were replaced at MCDC was over a period of time across the 2007 and 2008 fiscal years. Neither Captain Peterson (who was a Lieutenant at the time) nor Deputy Neely participated in the decision[-]making process.

(Adgers Decl. at ¶ 22.)

Through the Adgers Declaration, the Defendants have demonstrated that there is no causal link between Orr's alleged constitutional deprivations and Defendants' actions to the extent Orr's rights were violated by the design, selection, and installation of the security doors. However, this is only one of two cognizable theories of recovery. Orr also alleges in the Complaint that the doors were operated all night, which deprived him of sleep, and that the doors were "slammed." Implicit in Orr's use of the word "slammed" is that the doors were closed in a manner more aggressive than necessary. Thus, Orr's claims could be construed as alleging Defendants were personally involved in operating the security doors in a manner which infringed on Orr's constitutional rights.

FINDINGS AND RECOMMENDATION - 6                                              [RMD]

Defendants do not introduce evidence which negates the causal element under this second theory of recovery. Thus, although the court concludes Defendants may not be held liable under a "design, selection, and installation" theory, this does not entitle Defendants to summary judgment on Orr's constitutional claims.

### B. Merits of Orr's Constitutional Claims

Orr pleads his case primarily under the standards established to analyze Eighth Amendment claims. (*See* Compl. at 4-5) (asserting claims for "deliberate indifference" and "cruel and unusual punishment.") However, the record suggests that, at the time Orr was housed in Unit 4B, he was being detained pending trial. Thus, Orr's claims are more appropriately construed as arising under § 1983 for violation of Orr's Due Process rights under the Fifth and Fourteenth Amendments. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment."). This distinction is largely semantic because "detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment," and courts apply the "same standards." *Id.*

To determine if the conditions of confinement violate a detainee's Due Process rights, the court looks at a two-pronged test consisting of an objective element and a subjective element. The objective element is established if the plaintiff shows he or she was "deprived of the minimal civilized measure of life's necessities." *Id.* The subjective prong, which triggers liability on the part of a prison official, is present if the official "acted with 'deliberate indifference' to a substantial risk of serious harm," and does so in a "wanton" manner. *Id.* Mere negligence on the part of prison officials is not sufficient. *Id.*

[RMD]

1. The Objective Prong

In *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), the U.S. Supreme court articulated several factors which guide the court's analysis of whether the conditions of pretrial detention constitute "punishment" and thus violate the detainees due process rights:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

Moreover, the court must "decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Absent a showing of "intent to punish on the part of the detention facility," the court's analysis will turn on "whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternate purpose assigned to it." *Id.* (quoting *Kennedy*, 372 U.S. at 168-69) (brackets omitted).

The court concludes that Orr fails to demonstrate that the noise created by the security door was severe enough to meet the objective prong of his Fourteenth Amendment claim. Orr demonstrated, through the exhibits attached to his complaint, that the noise disturbed his sleep and deprived him of quiet throughout the day. The court will assume, without deciding, that sleep and some measure of quiet during waking hours constitute minimal civilized measures of life's necessities. However, Orr fails to create a genuine issue of fact that the noise created by the security doors is "excessive in relation to the alterative purpose assigned" to them. Defendants showed that,

FINDINGS AND RECOMMENDATION - 8                                                    [RMD]

because it is a detention facility, MCDC must have doors which can "accommodate the efficient movement of inmates and personnel," including those using mobility devices, while still serving the function of preserving employee and inmate safety. To that end, the security doors at issue were very heavy and quite large. (Adgers Decl. at ¶¶ 12-13.) The size and weight of the security doors is rationally connected to the legitimate purposes for which they were designed and, despite the noise which results from the doors' use, the disruption was not "excessive in relation to" the doors' purposes.

In addition, none of the *Kennedy* factors weigh in Orr's favor. First, although they serve the purpose of restricting movement between housing units, prison doors do not "involve an affirmative disability or restraint." Second, the noise created by heavy metal doors has not traditionally been regarded as punishment. Third, the operation of prison doors "promotes the traditional aims of punishment-retribution and deterrence" by keeping the prison facility secure. Fourth operating a loud door is not already a crime. Fifth, the doors clearly serve the purpose of securing the prison facility. Because Orr cannot prove the objective prong of his Due Process claim, it fails as a matter of law, and the court declines to analyze whether he can prove the subjective prong of that claim. Therefore, the court should grant summary judgment in Defendants favor on Orr's claims brought under § 1983 for violation of his Due Process rights.

III. Negligence Claim

Defendants next argue that to the extent Orr pleads a claim for common-law negligence, summary judgment in their favor is appropriate. They contend Orr is precluded from establishing damages, a necessary element of a negligence claim in Oregon. The court agrees.

To prevail on a negligence claim in Oregon, the plaintiff must show: (1) the defendant owed

FINDINGS AND RECOMMENDATION - 9                                    [RMD]

him or her a duty; (2) the defendant breached that duty; (3) a causal link exists between the defendant's breach and the plaintiff's injury; and (4) damages. *Mason v. Householder*, 58 Or. App. 192, 197 (1982). OR. REV. STAT. § 30.650 provides that: "Noneconomic damages, as defined in ORS 31.710, may not be awarded to an inmate in an action against a public body unless the inmate has established that the inmate suffered economic damages, as defined in ORS 31.710." Section 31.710 defines noneconomic damages to conclude, among other things, "pain, mental suffering, emotional distress, humiliation, injury to reputation, . . . [and] inconvenience and interference with normal and usual activities apart from gainful employment." OR. REV. STAT. § 31.710(2)(b), *held unconstitutional on other grounds by Klutschkowski v. PeaceHealth*, 354 Or. 150, 151 (2013).

In the "relief" section of his complaint, Orr requests injunctive relief, fees and costs, punitive damages, and "pain [and] suffering compensation." (Compl. at 7.) Because he does not request economic damages or produce evidence showing his entitlement to economic damages, Orr may not collect damages for pain and suffering under Oregon law. Further, although § 30.650 is silent as to punitive damages, Orr does not plead facts or present evidence which shows he is entitled to punitive damages. Therefore, the court concludes Defendants should be granted summary judgment on Orr's negligence claim.

### Conclusion

For the aforementioned reasons, the court should GRANT Defendants' Motion for Summary Judgment (Dkt. No. 20) and enter a judgment in Defendants' favor.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due April 23, 2015. If no objections are filed, then the Findings and Recommendation will go

under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of April, 2015.

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION - 11                                    [RMD]